IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ENDO PHARMACEUTICALS INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 17-2245 |
| CINDY FRYER, | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM

**Tucker, J.**                                                                                         **August 14, 2020**

    Before the Court is Defendant Endo Pharmaceuticals' Motion to Dismiss seven of eight counterclaims that Cindy Fryer asserted against it. After considering Endo's Motion to Dismiss, Fryer's Response, and Endo's Reply, Endo's Motion is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** Endo's Motion to Dismiss counterclaim count three in full, and in part for counts five, six, and seven. The Court **DENIES** Endo's Motion to Dismiss counterclaim counts two, four, and eight.

    The Court also considers individual counterclaim Defendants Smith and Wallace's Motion to Dismiss count eight of Fryer's counterclaim. The Court **DENIES** the individual Defendants' Motion to Dismiss.

### I. FACTUAL BACKGROUND

    Cindy Fryer worked in the Treasury Department of Endo Pharmaceuticals Inc., from January 2010 until she was terminated in January 2017. 3d Am. Answer, 11–24, ECF No. 35. She was hired in 2010 to be Endo's Director of Treasury Planning, Analysis and Operations. 3d Am.

Answer, 11. Fryer alleges that shortly after Endo hired her, she learned that similarly tenured younger male employees received stock bonuses. 3d Am. Answer, 13. Fryer claims that she was not given a similar award until after she complained about the inequality. 3d Am. Answer, 13.

In February 2011, Fryer was promoted to Senior Director. 3d Am. Answer, 13. Fryer alleges that when she was promoted to Senior Director, similarly situated younger males in the Finance Department were promoted to become Vice Presidents. 3d Am. Answer, 13. Fryer claims that between 2011 and 2015, Endo passed over her multiple times to fill vacancies in upper-level finance positions. 3d Am. Answer, 13–14. Fryer claims that younger males were largely chosen to fill those vacancies instead. *See* 3d Am. Answer, 13–14.

During the second half of 2014, Fryer served as Interim Treasurer during Endo's search for a permanent Treasurer. 3d Am. Answer, 14. Fryer claims that, in late 2014, the Chief Financial Officer told her that she would be promoted to the Vice President level. 3d Am. Answer, 15. However, during Fryer's tenure as Interim Treasurer, Endo made other personnel changes in its Finance Department. 3d Am. Answer, 15–16. Around August 2014, Endo hired Larry Smith as Senior Vice President of Tax. 3d Am. Answer, 15. A few months later, in early 2015, Endo hired Karen Wallace as Senior Vice President and Treasurer. 3d Am. Answer, 16. Wallace served as Fryer's supervisor. 3d Am. Answer, 16.

Fryer claims that the new hires, Smith and Wallace, discriminated against her because of her age and gender. 3d Am. Answer, 15–22. Fryer claims that Smith often made discriminatory and harassing remarks about her age. 3d Am. Answer, 15–16. Fryer claims that Wallace made antagonistic comments about her gender, including saying that she did not like to work alongside other strong females. 3d Am. Answer, 16. Fryer claims that Wallace gave her the first negative performance review in her time at Endo and denied her the previously-promised promotion to

become a Vice President.  3d Am. Answer, 16.  Fryer further claims that Wallace reassigned some of her job duties to make Fryer's role duplicative; a move ultimately used to justify Fryer's termination.  3d Am. Answer, 24.

Fryer alleges that similarly situated male colleagues were paid more than her for similar work and that younger males were unfairly preferred and promoted over her during her career at Endo.  3d Am. Answer, 18.  Fryer alleges that she reported the conduct of both Wallace and Smith to the CFO and Human Resources, but that her complaints were either ignored or not adequately addressed.  3d Am. Answer, 16–18.

## II. PROCEDURAL HISTORY

After terminating Fryer, Endo claims to have discovered multiple instances in which Fryer attempted to misappropriate and embezzle company funds, leading to the instant lawsuit.  Mem. Supp. Mot. Dismiss 4, ECF No. 38.  Endo filed a Complaint against Fryer on May 16, 2017, asserting claims for fraud, conversion, breach of contract, breach of the fiduciary duty, unjust enrichment, constructive trust, and a demand for an accounting.  *See* Compl., ECF No. 1.  In July 2017, Fryer filed an Answer and Counterclaims against Endo alleging breach of contract and implied covenant of good faith dealing as well as conversion.  Answer, 20–21, ECF No. 5.  Fryer subsequently filed three amended Answers which included additional counterclaims and added Larry Smith and Karen Wallace as individual counterclaim defendants.  *See*, Am. Answers, ECF Nos. 18, 26, and 35.  Fryer's Third Amended Answer, Affirmative Defenses and Counterclaims—the operative Answer for the Court's analysis—was filed in March 18, 2019.  3d. Am. Answer, ECF No. 35.  In that document, Fryer brings eight counterclaim counts against Endo including: (1) breach of contract and implied covenant of good faith and fair dealing; (2) defamation; (3) violations of the Equal Pay Act; (4) violations of the Fair Labor Standards Act

("FLSA"); (5) violations of the Pennsylvania Wage Payment and Collection Law ("WPCL"); (6) violations of Title VII of the Civil Rights Act; (7) violations of the Age Discrimination in Employment Act ("ADEA"); and (8) violations of the Pennsylvania Human Relations Act ("PHRA"). 3d. Am. Answer 31–38. Fryer also asserts count eight for violating the PHRA against individual counterclaim Defendants, Karen Wallace and Larry Smith. 3d. Am. Answer, 38. In response, counterclaim Defendant, Endo, filed its Motion to Dismiss Seven of Defendant's Eight Counterclaims on May 8, 2019. Mot. Dismiss Countercl., ECF No. 38. Individual counterclaim defendants, Larry Smith and Karen Wallace filed a Motion to Dismiss count eight of Fryer's counterclaims in June and July 2019. ECF Nos. 43, 44.

### III. STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true [] [and] construe the complaint in the light most favorable to the plaintiff." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, a complaint must contain sufficient factual allegations to state a claim for relief that is "plausible on its face." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). This "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). A claim is plausible if the complaint presents facts that allow the Court to reasonably infer wrongdoing by the defendant. *Iqbal*, 556 U.S. at 678.

4

The plausibility requirement does not require that a complaint demonstrate that defendant's wrongdoing was probable. *Twombly*, 550 U.S. at 556. Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleaded facts must allow the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 550 U.S. at 679. Determining whether a complaint has raised a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## IV. ANALYSIS

Endo moves to dismiss seven of Fryer's eight counterclaims. For the reasons outlined below, Endo's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.** The Court **GRANTS** Endo's Motion to Dismiss counterclaim count three in full, and in part for counts five, six, and seven. The Court **DENIES** Endo's Motion to Dismiss counterclaim counts two, four, and eight. The Court also **DENIES** individual counterclaim Defendants Smith and Wallace's Motion to Dismiss counterclaim count eight.

The Court will first discuss the counts for which it is granting the Motion to Dismiss, before discussing those for which the Court is denying Endo's Motion.

### A. Endo's Motion to Dismiss Fryer's Claim for Discrimination under the Equal Pay Act is GRANTED Because Fryer Does Not Allege Facts to Suggest a Violation with Sufficient Specificity.

In counterclaim count three, Fryer claims that Endo violated the Equal Pay Act by paying her less than similarly situated male employees. 3d. Am. Answer, 33. To state a claim for discrimination under the Equal Pay Act, a plaintiff must demonstrate that employees of the opposite sex were paid differently for performing equal work. *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000). Equal work is defined as "work of substantially equal skill, effort and

responsibility under similar working conditions." *Id*. The jobs need not be identical, but a plaintiff must demonstrate that they are similar in "work content, effort, skill and responsibility requirements." *Angelo v. Bacharach Instrument, Co.*, 555 F.2d 1164, 1174 (3d Cir. 1977).

Fryer merely recites boilerplate language in making her Equal Pay Act claim. Nowhere in her Answer does she describe the content of her work or the responsibilities assigned to her. Furthermore, she does not describe the roles or responsibilities of the males who were allegedly being paid more than her. Fryer's sole allegation is that "Endo violated the Equal Pay Act, 29 U.S.C. §206(d), by paying wages to Ms. Fryer, a woman, at rates less than the rates it pays male employees in the same establishment for equal work on jobs requiring equal skill, effort and responsibility, and performed under similar working conditions." 3d Am. Answer, 33.

Fryer's counterclaim does not raise factual allegations that amount to a cognizable claim for discrimination under the Equal Pay Act. Her claim must do more than simply recite the boilerplate requirements of the statute. Therefore, Endo's Motion to Dismiss Fryer's counterclaim count three for discrimination under the Equal Pay Act is **GRANTED**.

### B. Endo's Motion to Dismiss Fryer's Pennsylvania Wage Payment and Collection Law Claim is GRANTED IN PART and DENIED IN PART.

In counterclaim count five, Fryer claims that Endo violated Pennsylvania's Wage Payment and Collection Law ("WPCL") by not paying her severance and for remaining paid time off ("PTO"). 3d Am. Answer, 35–36. The Court **GRANTS** Endo's Motion to Dismiss for Fryer's claim for severance pay, but **DENIES** the Motion for Fryer's claim for PTO.

To state a claim under the WPCL, a plaintiff must allege "a contractual entitlement 'to compensation from wages' and a failure to pay that compensation." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011). When wages are unpaid for 60 days after an employee has made a claim for the compensation, and the employer has no good-faith reason for

6

non-payment, an employee is entitled to claim liquidated damages equal to 25% of the total wages due. *See* 43 P.S. § 260.10. A good faith dispute over the amount owed or a good faith "assertion of set-off or counter-claim" are satisfactory explanations for non-payment. *See* 43 P.S. § 260.9a.

### 1. The Motion is GRANTED for Fryer's Severance Pay.

Severance pay is considered a wage for purposes of the WPCL. *See Hartman v. Baker*, 766 A.2d 347, 353–55 (Pa. Super. Ct. 2000). Endo does not deny that it failed to pay Fryer the severance outlined in her termination agreement. Mem. Supp. Mot. Dismiss, 16. However, it asserts a good-faith reason for the non-payment. Endo's Complaint alleges that Fryer attempted to embezzle funds from the company which amounted to wrongful conduct that warranted the cessation of any severance payment. Compl., 1. Therefore, Fryer cannot state a WPCL claim for the severance payments since Endo has a good-faith reason for non-payment, which it communicated to Fryer. Therefore, Endo's Motion to Dismiss counterclaim count five is **GRANTED** with regards to the severance pay.

### 2. The Motion is DENIED for Fryer's PTO.

Fryer also claims that Endo violated the WPCL by not paying her for her accrued PTO. PTO is also considered a protected "wage" under the WPCL. *O'Donnell v. Passport Health Comm. Inc.*, 2013 WL 1482621 at *13 (E.D. Pa. April 10, 2013). Although Endo did pay Fryer's PTO "with interest," Fryer claims it did not do so until over nineteen months later—far after the 60-day period had passed. 3d. Am. Answer, 29; Mem. Opp'n Mot. Dismiss, 12. Therefore, Plaintiff may still be entitled to liquidated damages and Endo's Motion to Dismiss is **DENIED** with regards to the PTO payments in counterclaim count five.

### C. Endo's Motion to Dismiss Fryer's Claims for Harassment, Discrimination, and Retaliation under Title VII and the ADEA is GRANTED for Any Claim Arising Before January 14, 2017.

In counterclaim counts six and seven, Fryer alleges that Endo violated Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act by harassing and discriminating against her because of her gender and age. 3d Am. Answer, 36–37. Fryer also claims that she was retaliated against because of complaints she lodged regarding that discrimination. 3d Am. Answer, 36–37. Conduct that occurs more than 300 days prior to filing an EEOC charge is time-barred and cannot be considered in evaluating the sufficiency of a pleading. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 113 (2002) (300 days after an alleged unlawful employment practice is the time limit that is construed as a statute of limitations, and any claims based on discrete acts occurring prior to that date are time-barred.); 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B). "Discrete acts" are individually actionable and are considered time-barred if they fall outside of the statutory period, regardless of if they are related to acts within the statutory period. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d. Cir. 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). However, if a plaintiff alleges ongoing, systematic violations, she can recover for acts outside the 300-day period using the continuing violations theory. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 110–112.

Plaintiff was told that her role was being eliminated on January 26, 2017. 3d Am. Answer, 24. Plaintiff's last day working for Endo was on February 6, 2017. 3d. Am. Answer, 25. Plaintiff filed her charge with the EEOC on November 10, 2017.[1] Mem. Opp'n Mot.

---

[1] Defendants assert that Plaintiff filed her EEOC charge of discrimination on November 11, 2017. Mem. Supp. Mot. Dismiss, 11, ECF No. 38. Plaintiff asserts the charge was filed on

Dismiss, 20, ECF No. 40-2.  Based on the 300-day time limit, any discrete acts that occurred before January 14, 2017 would be barred.  However, actions taken postemployment can be considered for purposes of Title VII.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).  In addition, "the statute does not bar an employee from using [] prior acts as background evidence in support of a timely claim."

### 1. Harassment

In counterclaim counts six and seven, Fryer claims that she was harassed because of her sex and age.  3d Am. Answer, 36–37.  Title VII makes unlawful harassment that is "sufficiently severe or pervasive to alter to the conditions of the victim's employment and create an abusive working environment."  *Tourtellotte v. Eli Lilly and Co.*, 636 Fed. App'x 831, 845 (3d Cir. 2016) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1993)).  Termination of employment is considered a "discrete act" and cannot be aggregated with other actions to form a hostile work environment claim.  *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d. Cir. 2006).  Therefore, Fryer cannot use her termination in conjunction with other alleged discriminatory actions to make out a harassment claim.

In addition, Fryer cannot use alleged harassment which occurred before the 300-day statutory period to establish her harassment claim.  As a result, the Court must **GRANT** Endo's Motion to Dismiss for the harassment claim in counts six and seven to the extent that the Fryer is using events that occurred before January 14, 2017 to establish her harassment claim.  However, because Fryer alleges that some events occurred even after her employment was terminated, the

---

November 10, 2017.  At this phase of litigation, the Court must accept Plaintiff's assertions as true.  Therefore, the Court is using the November 20, 2017 date.

Court **DENIES** Endo's Motion to Dismiss counts six and seven for events that occurred on or after January 14, 2017. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. at 113.

### 2. Discrimination

Fryer alleges that Endo discriminated against her because of her sex and age in violation of Title VII and the ADEA. 3d Am. Answer 36–37. For both statutes, a discriminatory act occurs on the day that it happened. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 110. To recover, a plaintiff must file her charge within 300 days of the date of the act. *Id*. Fryer alleges that she was continually discriminated against because of her age and sex between the years of 2010 and 2016. Mem. Opp'n Mot. Dismiss 18–19. She further alleges that her termination was a result of age and sex discrimination. 3rd Am. Answer, 12. The Court **GRANTS** Endo's Motion to Dismiss to the extent that Fryer attempts to establish her discrimination claim based on events that occurred before January 14, 2017. The Court **DENIES** Endo's Motion to Dismiss Fryer's discrimination claim as it pertains to events that occurred on or after January 14, 2017. Fryer may also use prior events that as useful background.

### 3. Retaliation

Fryer also alleges that Endo retaliated against her for filing complaints about sex and age discrimination. 3d Am. Answer, 36. A retaliatory act occurs on the day that it happened, and a plaintiff must file their charge within 300 days of the date of the act to recover. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 110. Fryer was informed that her position was being eliminated on January 26, 2017. 3rd Am. Answer, 24. On November 10, 2017, less than 300 days after being notified of her termination, and the subsequent termination, she filed her charge with the EEOC. *See* Mem. Opp'n Mot. to Dismiss, 20. Fryer alleges that her termination was retaliation for her complaints of sex discrimination between 2010 and 2016. 3rd Am. Answer,

12. Fryer alleges she complained of discriminatory conduct consistently throughout her employment, and that she was ultimately terminated due to those complaints.  Because Fryer submitted her EEOC charge within 300 days of her termination, her retaliation claim is not time-barred.  Further, Fryer contends that Endo's retaliatory conduct continued even after her termination.  Mem. Opp'n Mot. to Dismiss, 19.  The Court **GRANTS** Endo's Motion to Dismiss to the extent that Fryer attempts to establish her retaliation claim based on events that occurred before January 14, 2017.  The Court **DENIES** Endo's Motion to Dismiss Fryer's discrimination claim as it pertains to events that occurred on or after January 14, 2017.  Fryer may also use prior events that as useful background.

### D. Endo, Wallace, and Smith's Motions to Dismiss Fryer's Harassment, Discrimination, and Retaliation claims under the PHRA are DENIED.

In count eight of her counterclaim, Fryer claims that Endo, Wallace, and Smith violated the PHRA by discriminating against, harassing, and retaliating against her.  To bring a claim under the PHRA, Fryer must have filed an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC") within 180 days after the alleged act of discrimination.  43 P.S. § 959(h).  "If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA."  *Woodson v. Scott Paper Co*., 109 F.3d 913, 925 (3d Cir. 1997).  A claim will be dismissed where the plaintiff failed to timely file a complaint with the PHRC.  *Mandel v. M&Q Packaging Corp*., 706 F.3d 157, 164 (3d Cir. 2013).  For claims under the PHRA, the filing of a lawsuit can constitute an adverse employment action.  *See Romero v. Allstate Insurance Co.*, Civ. No. 01-3894, 2016 WL 3654265, at *14 (E.D. Pa. July 6, 2016); *Brown v. TD Bank, N.A*., Civ. No. 15-5474, 2016 WL 1298973, *6–7 (E.D. Pa. Apr. 4, 2016) (holding that an employer will be protected, however, when the suit is not "objectively baseless").

Fryer filed her charge with the EEOC on November 10, 2017, which was dual-marked to be filed with the PHRC. Mem. Opp'n Mot. Dismiss, 20. Endo filed its suit against her on May 10, 2017—less than 180 days before she filed her charge with the PHRC. Fryer alleges that she did not engage in the alleged conduct that forms the basis of Endo's lawsuit. At this stage, we must take all of Fryer's allegations as true. Therefore, this Court cannot determine as a matter of law whether Endo's lawsuit is meritorious, and thus protected from a discrimination or retaliation claim.

Smith and Wallace separately filed a Motion to Dismiss claiming that Fryer never put them on notice of her PHRA claims. Smith Mot. to Dismiss, ECF No. 43. The Court disagrees. Fryer specifically named both Smith and Wallace in her PHRA complaint. As a result, the Court finds that the individual defendants were sufficiently on notice of Fryer's PHRA complaint.

Therefore, Endo, Wallace and Smith's Motions to Dismiss Fryer's PHRA claims are **DENIED**.

### E. Endo's Motion to Dismiss Fryer's Defamation Claim is DENIED.

In counterclaim count two, Fryer claims that Endo made defamatory statements about her. 3d. Am. Answer, 32–33. To establish a claim for defamation, a plaintiff must demonstrate "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of the defamatory meaning; (5) the understanding by the recipient that the statement refers to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a constitutionally privileged occasion. 42 Pa. Cons. Stat. § 8343. At the pleadings stage, a plaintiff is not required to allege the "precise" defamatory statements, nor is she required to name the specific person who made the statements, so long as the claim puts the defendants on notice. *Biss v. Gehring-Montgomery,*

*Inc.*, 2017 WL 1739592, at *3 (E.D. Pa. May 4, 2017).  A defamation claim can survive a motion to dismiss when the speaker is simply identified as the plaintiff's "employer" without identifying specific individuals.  *Rishell v. RR Donnelley & Sons Co.*, 2007 WL 1545622 at *3 (E.D. Pa. May 24, 2007).  Furthermore, at the motion to dismiss stage, a plaintiff is not required to identify by name to whom the statements were made.  *Id*.  Identifying a specific group of individuals to whom the statements were made is sufficient.  *Id*.

The Court finds that Fryer has sufficiently pled her defamation claim to survive a motion to dismiss.  She alleges that "Endo communicated to one or more third parties, including the Pennsylvania Record, that Fryer embezzled funds from Endo while employed by Endo.  Fryer also claims that Endo communicated this information to one or more of her former co-workers, including Brian Scheuer, prior to the initiation of litigation against her. 3d. Am. Answer, 29.

Endo argues that Fryer's defamation claim must be dismissed because the information published by the Pennsylvania Record came from its Complaint.  Mem. Supp. Mot. to Dismiss, 14.  Endo correctly articulates that pleadings cannot form the basis of a defamation claim.  Mem. Supp. Mot. to Dismiss, 14.  *See Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1991).  However, Fryer alleges that defamatory statements were made before Endo's suit against her was filed.  *See* 3d Am. Answer, 29–30.

Accepting all of Fryer's factual allegations as true, which the Court must at this phase of litigation, she has sufficiently alleged the elements of a defamation claim.  Fryer's allegation lays out the defamatory nature of the statement, the speaker, and to whom the statements were made.  Additionally, she claims that the allegedly defamatory statements were made before Endo filed its action against her.  Therefore, Endo's Motion to Dismiss Fryer's defamation claim, counterclaim count two, is **DENIED**.

### F. Endo's Motion to Dismiss Fryer's Claim for Retaliation under the FLSA is DENIED.

In counterclaim count four, Fryer also claims that Endo retaliated against her for lodging discrimination complaints, in violation of the FLSA. 3d Am. Answer, 34. To state a claim for relation under the FLSA, a plaintiff must allege "(1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015). A complaint by an employee constitutes protected activity if it is sufficiently clear and detailed such that a reasonable employer would understand it as an assertion of rights and protection under the statute. *Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

Fryer states a viable claim for retaliation. It is undisputed that Endo took adverse employment action against Fryer by terminating her. However, Endo argues that Fryer cannot demonstrate that she engaged in protected activity. Mem. Supp. Mot. to Dismiss, 10–11. Further, Endo argues that even if she did engage in protected activity, there is no causal link between the protected activity and her termination. Mem. Supp. Mot. to Dismiss 10–11. The Court finds that Fryer sufficiently plead facts that, if accepted as true, demonstrate protected activity and a causal link between the protected activity and her termination.

#### 1. Fryer Sufficiently Alleges Protected Activity.

Fryer alleges the following:

> Continuously, Ms. Fryer complained to Ms. Wallace, Mr. Upadhyay and Human Resources regarding the promotion of younger male employees over Ms. Fryer in the Finance Department despite Ms. Fryer's superior performance ratings. Ms. Fryer also complained that her similarly situated male colleagues in the Finance Department were being paid more for performing similar work under similar conditions.

14

3d Am. Answer, 18.  Viewed in the light most favorable to Fryer, these allegations would put an employer on notice that she was asserting her rights under the Act.  Therefore, the Court **DENIES** Endo's Motion to Dismiss count four of Fryer's counterclaim.

### 2. Fryer Sufficiently Alleges that Endo's Actions Constituted Adverse Employment Action.

Endo argues that Fryer does not sufficiently plead causation because there is a large temporal gap between the alleged protected conduct that she engaged in, and her termination.  Mem. Supp. Mot. Dismiss, 11–12.  Fryer alleges she first complained in 2010, and that she was ultimately terminated in 2017.  However, Fryer also alleges that she lodged numerous complaints spanning her entire employment at Endo.  3d. Am. Answer, 23–24.  Fryer's allegation that she consistently complained throughout her employment, then was subsequently terminated allows a reasonable factfinder to infer that there may have been a causal link between the complaints and her ultimate termination.  Plaintiff is not required to allege but-for causation at the motion to dismiss stage.  Therefore, Fryer makes out a legally cognizable claim for retaliation under the FLSA to survive the Motion to Dismiss.  Endo's Motion to Dismiss her FLSA claim, counterclaim count four, is **DENIED**.

## V.   CONCLUSION

For the foregoing reasons, Endo's Motion to Dismiss Fryers Counterclaims is **GRANTED IN PART AND DENIED IN PART**.  Fryer shall be able to proceed with the following counterclaim counts:

  A.  One (Breach of Contract),
  B.  Two (Defamation),
  C.  Four (FLSA),
  D.  The PTO claim in counterclaim count five (WPCL),
  E.  Six (Title VII) for events occurring after January 14, 2017,

15

    F.  Seven (ADEA) for events occurring after January 14, 2017,
    G.  Eight (PHRA).

In addition, Smith and Wallace's Motion to Dismiss count eight of Fryer's Counterclaims is **DENIED**.

An appropriate Order follows.